**Barbara A. RINGER, Plaintiff,**

v.

**L. Quincy MUMFORD, Individually and as Librarian of Congress, et al., Defendants.**

**Civ. A. No. 2074–72.**

United States District Court, District of Columbia.

Feb. 28, 1973.

Joseph L. Rauh, Jr., John Silard, Elliott C. Lichtman, Washington, D. C., for plaintiff.

Thomas G. Corcoran, Jr., Asst. U. S. Atty., Washington, D. C., for defendants.

## OPINION

WILLIAM B. JONES, District Judge.

Plaintiff Barbara A. Ringer has brought this action for declaratory judgment and injunction against L. Quincy Mumford, the Librarian of Congress (Librarian) and Robert W. Hutchison, the Library's Director of Personnel, seeking to declare invalid and nullify the appointment of George D. Cary as Register of Copyrights.[1] Jurisdiction is

---

I. In her complaint, Ringer included a prayer for relief that she be appointed Register of Copyrights under the power granted to the Court by §§ 717(c) and 706(g) of the Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103, amending 42 U.S.C. § 2000e–5. Plaintiff specifically disavowed re-

based on 28 U.S.C. §§ 1331 and 1361 (1970).

Ringer has worked in the Copyright Office of the Library of Congress since 1949, and has served as Assistant Register of Copyrights since 1966. On August 6, 1971, the position of Register of Copyrights was posted as available as of September 1, 1971, because of the impending resignation of Abraham L. Kaminstein. Ringer and Cary, who was then Deputy Register, both applied for the position and Cary was appointed on August 27, 1971. Four days later, Ringer brought Civil Action No. 1769–71 in this Court seeking nullification of that appointment because the Librarian had failed to follow the Library's personnel rules regarding appointments, and because he had selected Cary instead of Ringer for reasons that were discriminatory on the bases of sex and race.[2] On September 27, 1971, this Court declared Cary's appointment null and void because of the Librarian's failure to follow the personnel regulations, and enjoined him from appointing a new Register until those regulations were complied with. No finding was made on the claims of race and sex discrimination. On November 1, 1971, the Librarian again appointed Cary as Register.

Even before Ringer brought Civil Action No. 1769–71, she had initiated proceedings under Library of Congress Regulation 2010–3 (June 26, 1967) (LCR 2010–3), in which she charged that the Librarian had appointed Cary because of discrimination based on sex and race. After the September 27, 1971, Order of this Court declaring that appointment null and void, the administrative proceeding initiated by Ringer progressed under the new LCR 2010–3, issued September 1, 1971. Ringer appealed the November 9, 1971, adverse decision of the Library's Equal Opportunity Officer pursuant to LCR 2010–3, § 5A.[3] A hearing officer was appointed to hear the appeal and hearings were conducted during nine days of April, 1972, with some 1,500 pages of testimony being taken.

On August 10, 1972, hearing officer Ernest Waller issued a 32 page ruling reviewing the relevant facts and regulations, concluding that a preponderance of the evidence established that "the rejection of . . . [Ringer's] application for and appointment to the position of Register of Copyrights in the Library of Congress was the result of discrimination for reasons of sex and race."[4] The hearing officer recommended, among other items, that Cary's appointment as Register of Copyrights be rescinded and declared null and void and that Ringer be appointed, retroactive to

---

liance on the new Act at oral argument on the cross-motions for summary judgment, and dropped the request for her appointment as Register of Copyrights by the Court. Transcript of Hearing on Cross-Motions for Summary Judgment 54–56.

2. Ringer is white. The basis for the claim of discrimination based on race is that she was discriminated against because of her public advocacy of the rights of blacks in the Copyright Office. The defendants concede, for purposes of the claims in this case that they failed to follow their own regulations regarding discrimination, that a person favoring a particular racial group who is discriminated against for that reason would be discriminated against on the basis of race. Transcript of Hearing on Cross-Motions for Summary Judgment 13–14. The defendants do not concede that discrimination because

one is "pro-black" would constitute racial discrimination under the Equal Employment Opportunity Act of 1972, Pub. L. 92–261, 86 Stat. 103, *amending* 42 U.S.C. § 2000e–5, but Ringer does not rely on that Act. See note 1, *supra.*

3. LCR 2010–3, § 5A reads:
    A staff member may appeal to a hearing officer if, after his discrimination grievance has gone through the channels specified in this Regulation, he has received an unfavorable decision. He must file his appeal within ten work days from his receipt of official notification of the decision of the Deputy Librarian. This shall be his final administrative appeal.

4. Appeals Examiner's Findings and Recommended Decisions in the Appeal of Miss Barbara A. Ringer 32 [hereinafter Examiner's Findings].

October 29, 1971. The defendants submitted requests for reconsideration pursuant to LCR 2010–3, § 5D(2) on August 22, 1972. On August 31, 1972, hearing officer Waller denied those requests. On September 28, 1972, in a letter to plaintiff's counsel, the Librarian denied any discrimination on his part, and refused to rescind Cary's appointment and appoint Ringer.

The case is now before the Court on cross motions for summary judgment. As in the prior *Ringer* case, the plaintiff argues that the Librarian, in refusing to rescind Cary's appointment and appoint her, has violated his own regulations, this time LCR 2010–3, § 5D(4):

> All parties to the hearing and the Director of Personnel shall receive the findings, analysis, and conclusions of the hearing officer on reconsideration, and, if necessary, the Director shall initiate steps for appropriate corrective action, including proper notification to the staff member or members against whom the action is to be taken.

The plaintiff urges that this regulation requires the Librarian to follow the recommendations of the hearing officer. The defendants argue that the Librarian retains the final authority to appoint the Register of Copyrights under 17 U.S.C. § 202 (1970), and that LCR 2010–3 in no way binds the Librarian to rescind Cary's appointment. The defendants also argue that the findings and recommendations of the hearing officer were arbitrary and capricious and therefore need not be followed. The Court finds that LCR 2010–3 binds the Librarian to implement corrective action to remedy the findings of discrimination made by the hearing officer, and thus Cary's appointment must be declared null and void. The findings and recommendations of the hearing officer are found not to be arbitrary and capricious, and thus whether arbitrary and capricious findings must be followed under the regulations need not be decided.

■ It is clear that a federal agency must respect an employee's rights under that agency's own regulations. Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). In holding the Secretary of State bound by regulations which removed his discretion in certain personnel matters, the Court in *Service* held that although

> the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, neither was he prohibited from doing so . . . and having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them. 354 U.S. at 388, 77 S.Ct. at 1165.

■ LCR 2010–3, § 5D(4) requires that the Director of Personnel (defendant Hutchison) "shall" initiate steps to implement corrective action appropriate to the findings of the hearing officer. In the instant case, the hearing officer found that Ringer had been discriminated against on the bases of race and sex. Therefore it was incumbent upon the Library to take action to correct the discrimination found by the hearing officer. At a minimum, corrective action would require the rescission of Cary's appointment.

■ The defendants argue that because the Librarian has the ultimate statutory power over appointment of the Register of Copyrights under 17 U.S.C. § 202 (1970), he was free to disregard the findings and recommendations of the hearing officer. This interpretation of the Library's own regulations is strained at best. Under this interpretation, the procedures for bringing complaints to redress alleged discrimination by the Library or its employees are essentially illusory. In effect, the defendants argue that even though a hearing, which may be an extensive proceeding, as in the instant case, results in a finding of discrimination, that finding may be disregarded by the Librarian because he disagrees with it. It hardly seems

credible that the Library would draw a detailed set of regulations for processing complaints of discrimination and not regard them as binding upon itself.

Nor can it seriously be contended that the regulation is not binding upon the Librarian because the Director of Personnel and not the Librarian is mandated by LCR 2010–3, § 5D(4) to initiate corrective action upon a finding of discrimination. Once again, the defendants attempt to buttress the argument by reciting the Librarian's statutory authority to appoint the Register of Copyrights. But the defendants concede that the Librarian is the final decision maker on all appointments in the Copyright Office. To accept the defendants' position would make the regulations meaningless. No purpose would be served by a set of regulations purporting to afford a remedy for discrimination if the obligation of the Director of Personnel to initiate corrective action was subject to a veto by the Librarian.

The Librarian himself was a party to the appeals hearing conducted in this case. He also appeared as a witness, and gave over 200 pages of oral testimony. Under these circumstances, to give the Librarian the final decision on whether to implement corrective action to remedy the discrimination found by the hearing officer would be to construe the Library's discrimination regulations as an absurdity. Moreover, the Librarian himself indicated during the appeals hearing that his discretionary authority to make appointments is validly exercised only "as long as there is no indication of discrimination, or anything of a capricious nature." [5]

A reasonable reading of the regulations would indicate that the Librarian has delegated his discretion in hiring and firing. As the Court observed in *Service, supra,* 354 U.S. at 372, 77 S.Ct. at 1157:

[R]egulations validly prescribed by a government administrator are binding upon him as well as the citizen, and . . . this principle holds even when the administrative action under review is discretionary in nature.

■ This Court does lack the power to appoint a new Register of Copyrights, for that power is reserved to the Librarian by 17 U.S.C. § 202 (1970). But this Court can and does find that the Librarian violated his own regulation regarding discrimination in the choice of Cary over Ringer for that position. The Librarian can and will be required by the Court to follow that regulation.

The present case is unlike Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S. Ct. 941, 25 L.Ed.2d 115 (1970), relied on principally by the defendants. Rather, this case falls within the exception to the defense of sovereign immunity recognized by the Court in *Gnotta,* namely:

Where the officer's act is beyond his statutory power and where, although the action is within the scope of his authority, the power, or the manner of its exercise, is constitutionally void. 415 F.2d at 1277.

The defendants have argued strenuously that the findings and recommendations of hearing officer Waller were arbitrary and capricious, and thus not required to be followed by the Librarian. The principal objections raised by the defendants are to the specific findings that Ringer was discriminated against by reason of sex and race [6] in the Librarian's appointment of a new Register of Copyrights. This issue has been briefed in detail by the parties at the Court's request. Those findings and recommendations are found by the Court not to have been arbitrary and capricious.

The defendants' memorandum on the alleged arbitrary and capricious nature

5. Transcript of Proceedings, In re Appeal of Ms. Barbara Ringer 654 [hereinafter Appeal Transcript].

6. Examiner's Findings 12, 15, 24.

of the hearing officer's findings and recommendations essentially parallels the request for reconsideration filed with the hearing officer by Librarian Mumford upon his receipt of those findings. The hearing officer denied the Librarian's request for reconsideration because he was of the view that the extent of reconsideration sought would require a rehearing of the entire case. The defendants apparently concede, however, that if Waller's findings are supported by the hearing record, his refusal to reconsider them did not make them invalid. Waller did respond on a point-by-point basis to the request for reconsideration of defendant Hutchison, and several of those points overlap with objections raised by the Librarian.

■ The hearing officer found that Ringer had demonstrated through past performance that her qualifications for the position as Register of Copyrights were superior to those of Cary and that "personal bias based on sex rather than the individual merits of the applicants was the basis for not selecting [Ringer] . . . as Register of Copyrights." [7]

The defendants do not challenge directly the finding that Ringer's qualifications were superior; rather they challenge the finding that the action of Cary in destroying all copies of a proposed statement submitted to him by the Library's Equal Opportunity Officer which concerned Ringer's administrative complaint demonstrates his "contempt for administrative work." [8] Assuming that this finding is arbitrary and capricious, the general finding of sex discrimination is in no way invalidated. The hearing officer details three and one-half pages of findings that led him to conclude that Ringer had the superior job qualifications and that the failure of the Librarian to appoint her was because of sex discrimination.[9] None of those findings are challenged. The finding which is challenged merely is cited as an example of what the hearing officer concluded to be Cary's inferior administrative capability, not as the sole basis for that conclusion.[10] The finding of sex discrimination was not arbitrary and capricious.[11]

The second principal objection of the defendants is to the finding that the Librarian and white staff members were biased against Ringer because of her advocacy of blacks' positions in personnel matters and because of her willingness "to speak-out openly on . . . [racial] problems and [to] seek to enforce the published policies of the Library of Congress with respect to equal opportunity." [12] The defendants contend that the finding of "white backlash" at the Library because of Ringer's public recognition of racial discrimination and her attempts to redress it is not supported by the evidence because of several factual mistakes in the findings. A recitation of the events leading to that public recognition and the consequences of it show that whatever errors the hearing officer may have made do not support the charge that the findings are arbitrary and capricious.

Several appointments in early 1970 triggered a public revolt in the Copyright Office over alleged discriminatory preselection of personnel for promotion. A staff meeting to air these charges was held, at which Ringer admitted that mistakes had been made and promised that

---

7. *Id.* at 12.

8. *Id.*

9. *Id.* at 9–12.

10. Cary himself admitted he disliked administrative work. Appeal Transcript 545. Former Register Kaminstein testified that Ringer had superior administrative capabilities, *id.* at 85, 88, 137, and that he was of the opinion that the Librarian felt the same way. *Id.* at 91, 136.

11. In addition, the hearing officer found a general pattern of sex discrimination in the Library. Examiner's Findings 8. Although from the record this finding would appear not to be arbitrary and capricious, there is no need to reach that issue here. If the findings of the hearing officer with respect to Ringer individually are not arbitrary and capricious, then the Librarian is bound to act upon them.

12. Examiner's Findings 24.

an immediate investigation would take place. By a memorandum dated June 18, 1970, Ringer promised to investigate complaints of discrimination and, if justified, to act upon them.[13]

Although Ringer's actions pleased blacks and some whites in the Copyright Office,[14] it caused "the worse [sic] situation" that Chief of the Reference Division Waldo H. Moore "had ever seen . . . in [his] . . . years there."[15] The memorandum convinced three of the four Division Chiefs in the Copyright Office (all of whom are white) that Ringer was not suited for administrative work in the office,[16] although no problems with her administration were evident before the memorandum was circulated.[17] The Division Chiefs complained about the memorandum to the Librarian five days later,[18] and expressed their opposition to Ringer as a possible appointee as Register of Copyrights.[19]

The Librarian was "furious"[20] with the memorandum, which he described to Ringer as "terrible."[21] This criticism was the first he had made concerning her work performance in her more than 20 years at the Library.[22] Finally, Library Equal Opportunity Officer Herbert Belmear testified that a definite white backlash resulted from the Ringer memorandum.[23]

▇ Thus, there is ample evidence in the record to support the hearing officer's finding of racial discrimination.[24] Although he may have been mistaken as to some of the names and races of those who received the appointments which precipitated the racial trouble in the Copyright Office, his conclusion hardly depends on his accuracy in that regard. The finding was that Ringer's advocacy of blacks caused her to be discriminated against. That finding cannot be found to be arbitrary and capricious.

Several other objections to the findings of the hearing officer have been made and reviewed by the Court and found to be without merit. An appropriate Order is being entered with this Opinion.

### ORDER

This cause having come before the Court on cross-motions for summary judgment, and the Court having considered the motions, the briefs in their support, the argument of counsel, and having filed an opinion,

It is this 28th day of February, 1973, Ordered

1. That the plaintiff's motion for summary judgment be and is hereby granted and the Court issues a declaratory judgment that the defendants failed to follow the procedural regulations of the Library of Congress regarding discrimination in the appointment of George D. Cary as Register of Copyrights on November 1, 1971; that the defendants' failure to follow their own published procedures prejudiced the plaintiff's rights in seeking that appointment; and that the appointment of

---

13. Although this memorandum does not appear to be in the record, there is no dispute between the parties as to its content, and it was referred to frequently throughout the hearing of Ringer's appeal.

14. Appeal Transcript 162.

15. *Id.* at 1265. See also *id.* at 1270–73.

16. *Id.* at 1273.

17. *Id.* at 1278–79.

18. *Id.* at 1265–66, 1275.

19. Testimony of the Librarian, *id.* at 657. Division Chief Moore denies that the group expressed any questions about Ringer's qualifications for a possible appointment as Register of Copyrights. *Id.* at 1268.

20. Testimony of Former Register Kaminstein, *id.* at 98.

21. Testimony of Librarian, *id.* at 663–64, 676–77.

22. *Id.* at 663, 675–76. Former Register Kaminstein testified that prior to the memorandum he thought that the Librarian agreed that with him that Ringer was best qualified for the post of Register, in particular in comparison with Cary. *Id.* at 93–96, 98. *See also* note 10, *supra.*

23. Appeal Transcript 906.

24. See note 2, *supra.*

George D. Cary as Register of Copyrights is null and void;

2. That the defendant Mumford is enjoined from appointing a Register of Copyrights unless and until he follows the procedures of the Library of Congress governing that appointment;

3. That the defendant Mumford be required to implement corrective action to remedy the findings of discrimination against the plaintiff, in accordance with the regulations of the Library of Congress as construed in the Opinion filed in this case;

4. Nothing in this Order shall prevent the defendant Mumford from making a temporary or interim appointment of an Acting Register of Copyrights during the period in which the procedures of the Library of Congress are being complied with, but any such interim or temporary appointment shall be without prejudice to plaintiff's rights to be considered for the position of Register of Copyrights; and

5. That the defendants' motion for summary judgment be and is hereby denied.